# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   **v.**                                            **Case No. 16-CR-160**

**SETH FOERSTER**
        **Defendant.**

## DECISION AND ORDER

Defendant Seth Foerster moves for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, I deny his motion.

### I. FACTS AND BACKGROUND

Pursuant to an online investigation, law enforcement discovered that defendant possessed and shared images of child pornography. The investigation further revealed that defendant and a friend traded images of their own children, with the friend producing images of his daughters and defendant of his son. Defendant admitted a long-standing addiction to child pornography but denied that he ever touched a child inappropriately.

The government obtained an indictment charging defendant with production of child pornography, 18 U.S.C. § 2251; distribution of child pornography, 18 U.S.C. § 2252(a)(2); and possession of child pornography, 18 U.S.C. § 2252(a)(4). Pursuant to an agreement with the government, he pleaded guilty to an information charging receipt of child pornography, 18 U.S.C. § 2252(a)(2). Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed that a sentencing range of 144-240 months in prison was the appropriate disposition of the case.

On August 3, 2017, I sentenced defendant to 144 months in prison, followed by 10 years

of supervised release. In imposing this sentence, I noted the seriousness of the offense, which was more aggravated than many other child pornography offenses I had seen because defendant and his co-actor involved their own children. As the government noted, the record revealed that defendant had been involved with child pornography for many years, with his conduct escalating to production. Defendant argued that the collateral consequences, including divorce and loss of custody of his son, add to the punitiveness of the situation, but I found this a natural result of his conduct. Nevertheless, I found a 12-year term, more than double the minimum for a typical receipt offense, sufficient to provide just punishment. It also sufficed to protect the public, as defendant had no prior convictions and the record contained no indication of hands-on offending. Finally, this sentence sufficed to deter defendant, as he had never served any amount of time in custody before. Defendant is currently serving his sentence at FCI Elkton, with a projected release date of December 27, 2026.

On October 19, 2020, defendant filed a pro se motion seeking a reduction of his sentence to time served. I referred the matter to Federal Defender Services ("FDS") pursuant to the court's standing order regarding First Step Act motions, but FDS declined to supplement the pro se submission. The government then responded in opposition, and defendant declined the opportunity to file a reply. The matter is ready for decision.

## II. DISCUSSION

**A.   Compassionate Release Standards**

Section 3582(c)(1)(A) authorizes the district court to grant what is commonly known as "compassionate release." The statute provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights

2

to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The statute contains three requirements: (1) the defendant must first make a request to the warden before applying to the court; (2) the defendant must then demonstrate to the court that "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) the court must determine whether, even if such reasons are shown, a reduction of the sentence would be inconsistent with the applicable 18 U.S.C. § 3553(a) factors. United States v. Cole, No. 08-CR-327, 2021 U.S. Dist. LEXIS 2404, at *5 (E.D. Wis. Jan. 7, 2021).

### 1. Exhaustion

Before 2018, compassionate release could be granted only on a motion from the BOP. United States v. Sanford, No. 20-2445, 2021 U.S. App. LEXIS 2039, at *6 (7th Cir. Jan. 25, 2021). However, the First Step Act of 2018 amended the compassionate release statute to permit the court to adjudicate a motion directly from the defendant—provided, however, that the defendant must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. Id. The Seventh Circuit has held that, while this "exhaustion" requirement is not jurisdictional, it is a mandatory

3

claim-processing rule which must be enforced if raised by the government. Id. at *7; see also United States v. Williams, No. 20-2404, 2021 U.S. App. LEXIS 3762, at *4 (7th Cir. Feb. 10, 2021) (holding that "an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court").

### 2. Extraordinary and Compelling Reasons

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. See 28 U.S.C. § 994(t).[1] The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

---

[1] Congress did state that: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id. Courts have held that "while rehabilitative efforts alone will not support compassionate release, the court may take such efforts into account as part of the analysis." United States v. Anderson, No. 14-CR-186, 2020 U.S. Dist. LEXIS 187983, at *13 (E.D. Wis. Oct. 8, 2020); see also United States v. Hudson, 967 F.3d 605, 613 (7th Cir. 2020) (noting that the court may in deciding a First Step Act motion consider the defendant's post-sentencing conduct as part of the § 3553(a) analysis).

4

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

5

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v. Gunn, 980 F.3d 1078, 1080 (7th Cir. 2020); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

The statute's plain terms require a defendant seeking compassionate release to demonstrate that his situation is "extraordinary," i.e., beyond what is usual, customary, or regular, and his need for release "compelling," i.e., irreparable harm or injustice will result if relief is not granted. United States v. Scott, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020). The Seventh Circuit had noted that U.S.S.G. § 1B1.13 and its application notes provide a working definition of "extraordinary and compelling reasons" and thus can guide discretion without being conclusive. Gunn, 980 F.3d at 1080.

### 3. Section 3553(a) Factors

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. See United States v. Saunders, No. 20-2486, 2021 U.S. App. LEXIS 3398, at *4 (7th Cir. Feb. 8, 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns.").

6

Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020).

**B.     Defendant's Motion**

   **1.     Exhaustion**

On September 5, 2020, defendant made a request for release to the warden, the warden has not responded, and more than 30 days have passed. (R. 57 at 2, 10.) The government agrees that defendant has satisfied the exhaustion requirement. (R. 63 at 2.)

   **2.     Extraordinary and Compelling Reasons**

Defendant indicates that since his incarceration his mother has undergone a kidney transplant, which places her in the high risk category during the pandemic and limits her ability to work, and his father suffered a heart attack, less than a year after having a hip replaced; if released, he could help his parents financially and physically. (R. 57 at 2-3.) Defendant further indicates that if released he could assist in the care and upbringing of his son, who has not fared well without a father figure and is currently in therapy for emotional outbursts. (R. 57 at

7

3.)

The Commission's policy statement suggests that release may be warranted based on the death or incapacitation of the caregiver of a prisoner's minor child. Defendant makes no such claim here; instead, he notes that it is harder for his ex-wife to raise their son, while maintaining employment, on her own. While the policy statement is not binding, this case presents no occasion to determine whether and when the challenges facing a single parent might support the other parent's release from prison. Defendant's son was a victim in this case, and as of the time the PSR was prepared a no contact order was in place prohibiting defendant from contacting his son. (PSR ¶ 71.) It is unclear whether, if released, defendant would be permitted to participate in the care of his son.

As for defendant's other argument, most courts have found that "a prisoner's desire to care for an elderly or infirm parent is not an extraordinary and compelling reason warranting a sentence reduction, particularly where another family member is available to assist." Cole, 2021 U.S. Dist. LEXIS 2404, at *14 n.6; see also United States v. Gatewood, No. 20-5812, 2020 U.S. App. LEXIS 34063, at *4 (6th Cir. Oct. 28, 2020) ("[T]he district court, while sympathizing with Gatewood's concern for his parents' health, correctly noted that many inmates 'have aging and sick parents' and that this 'circumstance is not extraordinary.'"); United States v. Schaap, No. 2:12 CR 131, 2021 U.S. Dist. LEXIS 26938, at *6 (N.D. Ind. Feb. 12, 2021) ("[T]his court joins a number of other district courts who are not persuaded that caring for elderly parents constitutes a extraordinary and compelling reason warranting compassionate release."); United States v. Sholar, No. 1:95-cr-148-TWP-TAB-1, 2020 U.S. Dist. LEXIS 188307, at *6 (S.D. Ind. Oct. 7, 2020) ("Many inmates have aging and sick parents whom they might like to support. As a result, multiple courts have held that the desire to care for an elderly

8

parent is not an extraordinary and compelling reason warranting a sentence reduction."). While I do not rule out the possibility that parental need could support compassionate release in an appropriate case, defendant gives no indication that his parents lack other assistance, and the PSR reported that he has two sisters, both living in Wisconsin. In any event, defendant states that the "most relevant point involves [his] son." (R. 57 at 3.)

Accordingly, defendant has failed to establish extraordinary and compelling reasons for release. For the sake of completeness, I also address the § 3553(a) factors.

### 3. Section 3553(a) Factors

Defendant argues that the 4 years he has served satisfies the purposes of sentencing, especially given the fact that he spent more than 12 months in a county jail, then 9 more months in protective custody, and (since March 2020) his prison has been on lock-down due to COVID-19. (R. 57 at 6.) Defendant further contends that he has done well in prison, expanding the music program at his facility and completing various rehabilitative programs. (R. 57 at 6-7.) Finally, he indicates that on release he plans to live with his parents and pursue employment in the metal fabrication industry. (R. 57 at 7.)

While the conditions under which a prisoner has been confined are a relevant consideration, releasing defendant after he served less than half of his sentence would unduly depreciate the seriousness of his crime. As indicated above, this is not a case in which defendant simply possessed images of anonymous children; he distributed these materials and produced images of his own young son, in the apparent hope that he could trade those images for other material he wanted.

Granting immediate release would also undermine the deterrent effect of the sentence and could endanger the public. As the government notes, defendant's conduct appeared to

9

have been escalating over many years prior to his arrest. (R. 63 at 4.) As the government also notes, defendant's argument for release to care for his son, the person he victimized, suggests a lack of insight into the situation. (R. 63 at 5.)

Finally, while defendant appears to have done well in prison (and he has a plan for release), he does not demonstrate that his rehabilitative efforts have been unusual or extraordinary. I cannot conclude that those efforts overcome the concerns raised above.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 57) is denied.

Dated at Milwaukee, Wisconsin, this 17th day of February, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge